## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 05-11879
                                                   Chapter 7
JAMES R. CAMBRON and
WENDY L. CAMBRON,

      Debtors.


WILLIAM C. CARN, III,                              Adv. Pro. 06-1057
BANKRUPTCY TRUSTEE,

      Plaintiff,

   v.

MEDICAL DATA SYSTEMS, INC.,

      Defendant.


WILLIAM C. CARN, III,                              Adv. Pro. 06-1058
BANKRUPTCY TRUSTEE,

      Plaintiff,

   v.

MEDICAL DATA SYSTEMS, INC.,

      Defendant .


## REPORT AND RECOMMENDATION OF THE UNITED STATES
## BANKRUPTCY JUDGE WILLIAM R. SAWYER

These consolidated Adversary Proceedings came before the Court for trial on March 15,

2007.  Plaintiff William C. Carn, III, the Trustee in bankruptcy, was present by counsel David G.

Poston and Michael Brock.  Defendant Medical Data Systems, Inc., was present by its Chief

Operating Officer Gary Ball and by counsel Russell McGill.  The parties have filed briefs which

the undersigned has found helpful. (Adv. Pro. No. 06-1057, Docs. 30, 32). The Court heard evidence and the arguments of counsel and took the matter under advisement.

## I. PROPOSED FINDINGS OF FACT

On April 19, 2005, Medical Revenue Services, a unit of Defendant Medical Data Systems, Inc., wrote James R. Cambron a letter demanding payment of medical bills totaling $1,875.59. (Pl.'s Ex. A).[1] Two of the five individual debts allegedly owed were for services rendered at Flowers Hospital in March of 1997, more than eight years prior to the date of the letter. This is significant in that the statute of limitations to collect an unsecured debt in Alabama is only six years. Thus, of the $1,875.59 allegedly owed, $1,694.23 was uncollectible because the statute of limitations had expired.

On May 24, 2005, Medical Revenue Services wrote Wendy L. Cambron an almost identical collection letter as that sent to James Cambron. The letter addressed to Wendy Cambron demanded payment of a $175.00 medical bill. (Pl.'s Ex. B). The debt was for services allegedly rendered at Flowers Hospital on August 27, 2003.

Both letters contained the same opening paragraph. The first paragraph states as follows:

> Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:
>
> 1.) Real estate ownership/equity    4.) Your source of income
> 2.) Personal property assets    5.) Automobile ownership
> 3.) Savings, checking balances    6.) Verification of employment

---

[1] The full text of the letters are provided in an Appendix to this Memorandum.

(Pl.'s Exs. A, B).

The Plaintiff contends that this communication is misleading in that it implies that nonpayment of the bill will result in the seizure of property or garnishment of wages. As the creditor had not obtained judgment on the debts in question, and as the debts were unsecured obligations, the creditor had no immediate right to take any action with respect to the Cambrons' wages or property. Indeed, about 90% of the amount allegedly owed was more than six years old and therefore, uncollectible as a matter of law. With respect to the 10% of the debt which was not stale, the evidence showed that Medical Data had no intention to take that action. Indeed, the evidence is clear that it was the intention of Medical Data to attempt to make telephonic contact with the Cambrons and press them to pay these debts. If those efforts were unsuccessful, the debt was referred back to the original creditor, which in this case was Flowers Hospital.

Medical Data has its principal office in Sebring, Florida, and describes itself as a "secondary" debt collector. That is, it does not receive referrals of debts until collection has first been attempted by another agency. Its efforts to collect debts appear to consist of two things. First, it sends a letter and then it follows up with telephone calls. Gary Ball, Medical Data's Chief Operating Officer, testified that they would not send the letters unless it was required by the Fair Debt Collection Practices Act, as he feels that the most effective means of collecting debts is by way of the telephone.

In response to questions about collecting a debt after expiration of the statute of limitations, Ball testified that he felt that the debtors have a moral obligation to repay a debt which survives the statute of limitations. Ball does not believe that he has any obligation to

disclose the fact that the debts he is attempting to collect are beyond the statute of limitations. Nor apparently, does he believe that he must tell debtors that he may not seize their property until after he takes judgment, an action he has no intention to take.

The question of whether the first paragraph of the letters in question is deceptive is a close one. There is nothing in the letters that is demonstrably false. Ball's claim that information on the debtors' wages and property is needed to evaluate further collection efforts is not, in and of itself, wholly implausible. However, there are several troublesome facts here. Medical Data did not order credit reports or consult property records, state motor vehicle records, or other sources which would have provided the same information. In the experience of the undersigned, financially stressed individuals frequently do not voluntarily provide such information unless legally obligated to do so. Moreover, when such information is provided by an uncounseled debtor, the information is frequently incomplete or inaccurate. Ball testified that Medical Data mails approximately 1.8 million such letters each year. However, Medical Data provided no evidence as to how often debtors respond to such letters with accurate information. Given the evidence adduced at trial, it strains credibility to believe that the true purpose of the language in question is to obtain accurate information on a debtors' assets and wages. Rather, it appears that the purpose, and surely the effect of these letters, is to coerce payment by giving a false impression that the debtors' wages and assets are in jeopardy.

## II.  PROPOSED CONCLUSIONS OF LAW

### A.  Procedural Setting

This is an action under the Fair Debt Collection Practices Act.  15 U.S.C. § 1692k.  The Plaintiff seeks damages in the amount of $1,000.00 in each Adversary Proceeding, plus attorney's fees and costs.  15 U.S.C. § 1692k(a).

James R. Cambron and Wendy L. Cambron filed a joint petition in bankruptcy pursuant to Chapter 7 of the Bankruptcy Code on September 8, 2005.  (Case No. 05-11879, Doc. 1).  The claims of James and Wendy Cambron are property of their bankruptcy estates.  11 U.S.C. § 541.  As these claims are property of the estate, this Court has jurisdiction to hear these Adversary Proceedings pursuant to 28 U.S.C. § 1334.  These claims are "related to" the Cambrons' bankruptcy filing.  William C. Carn, III, the Chapter 7 Trustee, has been substituted as named Plaintiff for James and Wendy Cambron.[2]

In general terms, an action is a core proceeding if it is one that could not be brought but for the existence of a bankruptcy case.  28 U.S.C. § 157(b); see also, The Whiting-Turner Contracting Co. V. Electric Machinery Enterprises, Inc. (In re Electric Machinery Enterprises, Inc.), __ F.3d __ , 2007 WL 548781 (11th Cir. Feb. 23, 2007) (holding that a proceeding is core "if the proceeding is one that would arise only in bankruptcy").  As these Fair Debt Collection Practices Act claims do not depend on a bankruptcy filing for their existence, these are not core proceedings.  As these are non-core proceedings, the undersigned Bankruptcy Judge makes

---

[2]  The Court conditionally dismissed Adversary Proceeding No.06-1057 on the grounds that it had not been brought by the proper party in interest.  (06-1057, Docs. 9, 10).  In response, the Chapter 7 Trustee William C. Carn, III, entered the case as Plaintiff.  (06-1057, Doc. 11).  As the same reasoning applies to Adversary Proceeding No. 06-1058, Trustee Carn is likewise substituted as named Plaintiff in Adversary Proceeding No. 06-1058.

Case 06-01058   Doc 27   Filed 04/05/07   Entered 04/05/07 10:26:38   Desc Main
Document    Page 5 of 13

proposed findings of fact and conclusions of law in accordance with the provisions of 28 U.S.C.

§ 157(c)(1) and directs the Clerk of the Bankruptcy Court to file the same with the District

Court. By way of a separate order, a schedule for the filing of objections pursuant to Rule 9033,

FED. R. BANKR. P. is established.

### B. FDCPA Claims

The Plaintiff makes claims under both 15 U.S.C. § 1692e(5) and (10). While the same

set of facts support each claim, the undersigned with analyze the claims separately. Although

the Court concludes that the Plaintiff has established both claims, it will discuss the e(10) claim

first because, in its view, it is the stronger claim.

### 1. The § 1692e(10) Claim[3]

Congress has determined that "there is abundant evidence of the use of abusive,

deception, and unfair debt collection practices by many debt collectors. Abusive debt collection

practices contribute to the number of personal bankruptcies, to marital instability, of the loss of

jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress further stated that

"it is the purpose of this subchapter to eliminate abusive debt collection practices by debt

collectors." 15 U.S.C. § 1692(e). In furtherance of this purpose, Congress enacted the "Fair

Debt Collection Practices Act," which provides, in part, as follows:

---

[3] For purposes of clarity, the claims made pursuant to 11 U.S.C. § 1692e(10) will be
referred to as the e(10) claims, and the claims made pursuant to 11 U.S.C. § 1692e(5) will be
referred to as the e(5) claims. The e(5) claims are considered in Part II(B)(2) below.

A debt collector may not use any false, deception, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\* \* \*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.

The issue here is whether the letters in question are deceptive. The United States Court of Appeals for the Eleventh Circuit has held that courts making this determination should use the "least sophisticated consumer" standard. Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985).

That law was not "made for the protection of experts, but for the public–that vast multitude which includes the ignorant, the unthinking and the credulous," and the "fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.

Id. at 1172-73 (internal citations omitted); see also, Kimber v. Fed. Financial Corp., 668 F.Supp. 1480, 1487-89 (M.D. Ala. 1987) (Thompson, J.) (holding that bringing suit to collect a debt barred by the statute of limitations was deceptive within the meaning of the Fair Debt Collection Practices Act); Thompson v. D.A.N. Joint Venture III, L.P., 2007 WL 496754 (M.D. Ala. Feb. 13, 2007) (Moorer, Mag. J.) (to same effect).

The Plaintiff argues that the language in question is deceptive because it falsely implies that the debtors' assets and wages may be in jeopardy. They argue that the purpose of this language is to unlawfully coerce payment. Gary Ball testified that the purpose of this language

-7-

was to attempt to obtain information on the debtors, reasoning that debtors who are employed and have assets are more likely to pay their debts. The undersigned finds that the language in question is deceptive and that the explanation advanced by Medical Data is unconvincing. An unsophisticated consumer would be deceived by the language in the letters.

A debtor with competent counsel would know that a debt is uncollectible if the statute of limitations has run. A counseled debtor would also know that the holder of an unsecured claim may not seize property until judgment has been taken in a court of law. Thus, the ambiguity in the first paragraph of the collection letters would cause no harm to a properly counseled debtor. However, the law is clear that the Court, in determining whether a given communication is misleading, for purposes of an e(10) claim, must apply the "least sophisticated consumer" standard. Applying that standard here, the Court finds that the communication from Medical Data is misleading. An unsophisticated consumer would conclude that his wages and property are in jeopardy and for that reason, would be coerced into paying the debt in violation of the Fair Debt Collection Practices Act.

Medical Data advanced an argument that the language in question is not deceptive. Ball testified that the information as to wages and property is useful to Medical Data in its determination as to what further action to take. If a debtor has a job and property, he is more likely to pay the debt and for that reason should be further pressed to pay. This reasoning is circular. A debtor without income and without property would not feel coerced to pay as he has nothing to lose. Indeed, it is only those debtors with jobs and property who Medical Data would seek to mislead.

The Plaintiff argues that Medical Data's claim–that they need the information for their collection purposes–is without merit. Ball admitted that they had not consulted credit reports or property records, nor had they consulted any other records which might have provided the information requested in the first paragraph of the letter in question. That Medical Data had not taken any such action suggests that their claim is a pretext and that their true purpose was to unlawfully coerce payment.

### 2. The § 1692e(5) Claim

Plaintiff also alleges a violation of 15 U.S.C. § 1692e(5), which prohibits a debt collector from threatening to take action which cannot legally be taken. As the letters in question do not, strictly speaking, threaten anything, there is no express violation of this provision. However, the overarching problem here is one of deception and not of express threats to take action. For this reason, the undersigned is of the view that the claims are better considered under e(10) than under e(5). It should also be noted that the Eleventh Circuit does not apply the "least sophisticated consumer" standard to e(10) claims and for this reason, the Plaintiff's burden is somewhat heavier for an e(5) claim than is the case for an e(10) claim.

While the undersigned is of the view that the Plaintiff's claims here are best cast in terms of e(10), the question remains whether the Plaintiff has also made out a claim under e(5). There is case law for the proposition that deceptive language in a collection letter which suggests that such action will be taken may constitute such a violation. <u>Mailloux v. Arrow Financial Services, LLC</u>, 204 F.R.D. 38, 41-42 (E.D.N.Y. 2001) (certifying class status where a collection letter deceptively implied that collection action which could not lawfully be taken would be taken and finding a violation of § 1692e(5)). The facts in <u>Mailloux</u> are similar to the facts here in that the

-9-

letter inquired into the debtor's income, checking account balances, employment, real estate ownership, and automobile ownership. The court in <u>Mailloux</u> found that letter, which was very similar to the letters here, to be in violation of e(5). Therefore, the undersigned concludes, in the alternative, that the evidence establishes a violation of § 1692e(5), as well as a violation of e(10).

### C. Damages

Having found violations of the Fair Debt Collection Practices Act, the Court should next consider an award of damages. As the Plaintiff does not request actual damages, none are awarded. <u>See</u> 15 U.S.C. § 1692k(a)(1) (allowing an award of actual damages). In addition, the Court may award "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). Having heard the evidence and having considered the arguments of counsel, the Court is of the view that an award of damages in the amount of $1,000.00 for each claim is appropriate, for a total of $2,000.00. In other words, the claim originally held by James Cambron and the claim originally held by Wendy Cambron are allowed separately. It further appears that an award of attorney's fees is appropriate. <u>See</u> 15 U.S.C. § 1692k(a)(3).

### III. CONCLUSION

Having considered the evidence, the undersigned finds that the language in question in the letters, applying the least sophisticated consumer standard, is deceptive within the meaning of § 1692e(10). The effect of the subject language is to create apprehension that the debtors' assets and wages are in jeopardy and thereby unlawfully coerce payment of a debt. It is recommended that judgment be entered in favor of the Plaintiff in the amount of $1,000.00 each for each of two claims, for a total of $2,000.00 In addition, it is further recommended that

-10-

Plaintiff be awarded attorney's fees. The undersigned will order Plaintiff's counsel to file an Affidavit in support of their claim for attorney's fees within 15 days. Defendant will be given 15 days to respond.

Done this the 5th day of April, 2007.

/s/ William R. Sawyer
United States Bankruptcy Judge

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

Reference
F9708100109

Total Amount Due
$1874.59

Toll Free Number
(800) 315-6050



CHECK CARD USING FOR PAYMENT

| | MasterCard ☐ | VISA ☐ | AMEX ☐ |
| --- | --- | --- | --- |

CARD NUMBER

AMOUNT

EXP. DATE

SIGNATURE

RETURN SERVICE REQUESTED
04/19/2005

medPaxA12DP0A107KE·014004

JAMES R CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



☐ CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

Page 1 of 1

▼ DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

---

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

| Account # | Client Name | Service Date | Balance | Patient Name |
| --- | --- | --- | --- | --- |
| F9708500163 | Flowers Hospital | 03/26/1997 | 307.68 | Lehr, Timmy J |
| F9708100109 | Flowers Hospital | 03/22/1997 | 1386.55 | Lehr, Timmy J |
| F0307000545 | Flowers Hospital | 03/13/2003 | 58.77 | Cambron, James R |
| F0402500112 | Flowers Hospital | 01/25/2004 | 55.74 | Cambron, James R |
| F0402400129 | Flowers Hospital | 01/24/2004 | 65.85 | Cambron, James R |

TOTAL BALANCE: $1874.59

PLAINTIFF'S EXHIBIT
14
PENGAD-Bayonne, N. J.

PL1

**Medical Revenue Services**
P.O. Box 1149
Sebring FL 33871

| Reference | Total Amount Due |
|---|---|
| F0323900637 | $175.00 |

Toll Free Number
(800) 315–6050

**RETURN SERVICE REQUESTED**
05/24/2005



CHECK CARD USING FOR PAYMENT

CARD NUMBER

AMOUNT | EXP. DATE

SIGNATURE

mad9axA130XCA10DJV•007736
WENDY L CAMBRON
PO BOX 464
DALEVILLE AL 36322-0464

MAKE CHECK PAYABLE AND REMIT TO:

Medical Revenue Services
PO BOX 1149
SEBRING FL 33871-1149



CHECK HERE IF ADDRESS OR INSURANCE INFORMATION IS
INCORRECT AND INDICATE CHANGE ON REVERSE SIDE

DETACH HERE ▼ AND RETURN TOP PORTION WITH YOUR PAYMENT

---

Medical Revenue Service is a collection agency, retained to represent the below named creditor. Since you have failed to pay this obligation in full, we now must determine your ability to repay this debt. The information we may be seeking, if available, to determine what further collection effort to take is:

1.) Real estate ownership/equity
2.) Personal property assets
3.) Savings, checking balances
4.) Your source of income
5.) Automobile ownership
6.) Verification of employment

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgement and mail you a copy of such judgement or verification. If you request this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please make your check or money order payable to Medical Revenue Service. In order to assure proper credit to your account, include the reference number with your payment. We also accept "check by telephone" for your convenience. If you have any questions, you may contact an account representative at the above listed phone number.

Pursuant to Section 807(11) FDCPA, this communication is from a debt collector and is an attempt to collect a debt. Any further information obtained will be used for that purpose.

A. U. Clancy
Collection Department

AUC/tb

---

| Account # | Client Name | Service Date | Balance | Patient Name |
|---|---|---|---|---|
| F0323900637 | Flowers Hospital | 08/27/2003 | 175.00 | Cambron, Wendy L |

TOTAL BALANCE: $175.00



PLAINTIFF'S
EXHIBIT

B

PL1